**STATE OF MICHIGAN**
**THIRD CIRCUIT COURT**



## SUMMONS AND RETURN OF SERVICE

**CASE NO.** 11-009094-CZ

COURT ADDRESS: 2 WOODWARD AVENUE, DETROIT, MICHIGAN 48226

COURT TELEPHONE NO. (313) 224-

THIS CASE ASSIGNED TO JUDGE: Susan D. Borman          Bar Number: 11016

**PLAINTIFF**
ICG REA MANAGER LLC

**DEFENDANT**
VS THE FIRE RETIREMENT SYSTEM OF THE CITY O

**PLAINTIFF'S ATTORNEY**
Hampton, Douglas D.
(P-46378)
2000 Town Ctr Ste 1900
Southfield, MI 48075-1152
(248) 351-2682

| CASE FILING FEE | JURY FEE |
|---|---|
| Paid | No Jury Demand |

| ISSUED | THIS SUMMONS EXPIRES | DEPUTY COUNTY CLERK |
|---|---|---|
| 07/29/2011 | 10/28/2011 | Linda Taylor |

*This summons is invalid unless served on or before its expiration date.    Cathy M. Garrett – Wayne County Clerk

**NOTICE TO THE DEFENDANT:** In the name of the people of the State of Michigan you are notified:
1. You are being sued.
2. YOU HAVE 21 DAYS after receiving this summons to file an answer with the court and serve a copy on the other party or to take other lawful action (28 days if you were served by mail or you were served outside this state).
3. If you do not answer or take other action within the time allowed, judgment may be entered against you for the relief demanded in the complaint.

[X] There is no other pending or resolved civil action arising out of the same transaction or occurrence as alleged in the complaint.
[ ] A civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint has been previously filed in _____ Court.
[ ] There is no other pending or resolved action within the jurisdiction of the family division of circuit court involving the family or family members of the parties.
[ ] An action within the jurisdiction of the family division of the circuit court involving the family or family members of the parties has been previously filed in _____ Court.
The docket number and assigned judge of the civil/domestic relations action are:

| Docket no. | Judge | Bar no. |
|---|---|---|
|  |  |  |

The action [ ] remains [ ] is no longer pending.

I declare that the complaint information above and attached is true to the best of my information, knowledge, and belief.

Date: 7/29/11    Signature of attorney/plaintiff

**COMPLAINT IS STATED ON ATTACHED PAGES. EXHIBITS ARE ATTACHED IF REQUIRED BY COURT RULE.**
If you require special accommodations to use the court because of disabilities, please contact the court immediately to make arrangement.

FORM NO. WC101
REV. (3-98)   MC 01 (10/97)   **SUMMONS AND RETURN OF SERVICE**   MCR 2.102(B)(11), MCR 2.104, MCR 2.107, MCR 2.113(C)(2)(a), (b), MCR 3.206 (A)

PLAINTIFF

12-05076-mbm    Doc 1-1    Filed 06/08/12    Entered 06/08/12 11:18:47    Page 1 of 11

## STATE OF MICHIGAN
## IN THE CIRCUIT COURT FOR THE COUNTY OF WAYNE

ICG-REA MANAGER, LLC a
Michigan Limited Liability Company, and
ICG LEASEBACK FUND I, LLC, a
Michigan Limited Liability Company,

ICG REA MANAGER LLC, et al. v TH
Hon. Susan D. Borman    07/29/2011

11-009094-CZ

Plaintiffs,

v.

THE GENERAL RETIREMENT SYSTEM OF
THE CITY OF DETROIT and THE FIRE
RETIREMENT SYSTEM OF THE CITY OF DETROIT,

Defendant.

_____

**Law Offices of Douglas D. Hampton P.C.**
Douglas D. Hampton (P46378)
Daniel C. Flint (P73983)
Attorneys for the Plaintiffs
2000 Town Center, Suite 1900
Southfield, MI 48075
(248) 351-2682

2011 JUL 29 A 10: [illegible]   CATHY M. GARRETT WAYNE COUNTY CLERK FILED

_____

### PLAINTIFFS' VERIFIED PETITION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE

In support of Plaintiffs, ICG-REA MANAGER, LLC and ICG LEASEBACK FUND I, LLC, Verified Petition for Temporary Restraining Order and Order to Show Cause, Plaintiffs rely upon MCR 3.310(A)(4) and the attached Brief in Support.

Respectfully submitted,

*[signature]*

**Law Offices of Douglas D. Hampton, P.C.**
Douglas D. Hampton (P46378)
Daniel C. Flint (P73983)
Attorney for Plaintiffs
2000 Town Center, Suite 1900
Southfield, MI 48075
248-351-6283

Dated: July 29, 2011

## BRIEF IN SUPPORT OF VERIFIED PETITION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE

### STATEMENT OF FACTS

#### Introduction

This action involves, among other things, issues dealing with secured transactions and contractual law. Specifically, two separate secured loans are at issue, each comprised of a number of individual agreements. For purposes of this Temporary Restraining Order ("TRO"), the first loan agreement, entered into on December 21, 2007, will be referred to as the "Senior Loan" and the second, entered into on December 27, 2007, as the "Junior Loan." Furthermore, for clarification purposes, the actual documents contained in both agreements refer to the Junior Loan as the "Mezzanine Loan," and the Junior Borrower and Lender as the "Mezzanine Borrower" and "Mezzanine Lender."

This TRO is necessary because the Junior Lender is attempting to enforce a provision of the Junior loan that is unenforceable under the agreements. In order to thoroughly understand the issues, some background information must first be given.

#### Background Information

The Senior and Junior Loans were both executed in order to allow the Borrowers to obtain five separate properties from General Motors ("the GM properties"), which it would then lease back to the General Motors Corporation. The parties to each agreement are as follows:

A. **Senior Loan Parties**

  1. Senior Loan Lender – AXA Equitable Life Insurance Company.

  2. Senior Borrower – ICG Leaseback Fund I, LLC.

B. **Junior Loan Parties**

3. Junior Loan Lender – General Retirement System of the City of Detroit ("GRS") and the Police and Fire Retirement System of the City of Detroit ("PFRS")

4. Junior Borrower – ICG-REA Manager, LLC

Each loan agreement is comprised of a number of closing documents. The Senior Loan agreement involves, among other things, a "Cash Management Agreement" (between Senior Lender and Senior Borrower, **Attached as Exhibit 1**) and an "Intercreditor Agreement" (between Senior Lender and Junior Lender, **Attached as Exhibit 2**). Similarly, the Junior Loan agreement involves, among other things, a "Loan Agreement" and "First Amendment to Loan Documents," (between Junior Lender and Junior Borrower, **Attached as Exhibits 3 and 4**) as well as an "Assignment of Limited Liability Company Interests in ICG Leaseback Fund I, LLC" (between Junior Lender and Junior Borrower, **Attached as Exhibit 5**). The basic terms of each agreement are as follows:

**C. Senior Loan Basic Terms (Agreement Between Senior Lender and Senior Borrower).**

Pursuant to the Cash Management Agreement, Senior Lender and Senior Borrower entered into a loan agreement whereby Senior Lender loaned $77,000,000 to Senior Borrower in order to acquire the GM properties. In return, Senior Borrower would manage the property and collect rent payments from GM. These payments were then held in trust for Senior Borrower until the full amount of the loan was paid off. (*see* Cash Management Agreement, p. 1, ¶ 2; and p. 2, §1.01). This loan was secured by, among other things, the mortgages covering the five GM properties.

**D. Junior Loan Basic Terms (Agreement Between Junior Lender and Junior Borrower).**

"[Junior] Lender and [Junior] Borrower] entered into a loan agreement . . . whereby [Junior] Lender agreed to make a $44,000,000 loan . . . and committed to issue an $8,000,000 Letter of Credit to [Junior] Borrower in connection with the acquisition and leaseback of [the

five GM properties]." (July 27, 2011 letter from Junior Lender to Junior Borrower and Senior Lender, **Attached as Exhibit 6**, at p.2, ¶3). In other words, in consideration for the $44,000,000, Junior Borrower agreed to assign Senior Borrower's right to collect the rent payments paid by GM.

The sole reason Junior Borrower had the ability to assign Senior Borrower's right is because ICG-REA Manager, LLC (Junior Borrower) "is the sole member of ICG Leaseback Fund I, LLC [Senior Borrower] . . . and is the owner of 100% of the membership interests [in the Senior Borrower]." (Assignment, p 1; ¶ "C"). Had this not been the case, the agreement between Junior Lender and Junior Borrower could not exists.

### E. Intercreditor Agreement (Agreement Between Senior Lender and Junior Lender).

In addition to the Loan Agreement and the Assignment, Junior Lender entered into an "Intercreditor Agreement" with Senior Lender. Pursuant to this agreement, Junior Lender expressly agreed that itself and all Junior Loan Documents would be subordinate to Senior Lender and all Senior Loan Documents. (Intercreditor Agreement, §8(a) at p.11). Moreover, Junior Lender expressly agreed that "[e]very document and instrument included within the [Junior] Loan Documents shall be subject and subordinate to each and every document and instrument included within the Senior Loan Documents . . . ." (Id., §8(b) at p.11).

That being said, this TRO is the result of a July 27, 2011 letter from Junior Lender in which Junior Lender is trying to enforce a provision in its Junior Loan Documents that is subordinate to and in direct conflict with a provision in the Senior Loan Documents. Because the Junior Lender expressly agreed that all Junior Loan Documents would be subordinate to those of Senior Lender, it must be enjoined from enforcing this conflicting provision.

### F. The unenforceable provision.

In the July 27, 2011 letter, Junior Lender alleges that Junior Borrower failed to make its required payment, which constitutes a Default under the Junior Loan Documents. Thus, Junior Lender asserts that it now has the ability to "exercise its remedies under the Assignment of Member Interests, subject to compliance with the terms of the Intercreditor Agreement . . . ." (Letter at p.3, ¶ 7.) Specifically, Junior Lender is attempting employ the power granted to it under section 8(a) of the Assignment, which states in pertinent part that "[Junior Borrower] appoints [Junior Lender] as its attorney-in-fact to take such actions, execute such documents, and perform such actions after the occurrence of an Event of Default . . . ." (Assignment at p.3). Moreover, as indicated by the July 11, 2007 letter, Junior Lender is attempting to use this Power-of-Attorney to direct Senior Lender "to not make any payments to [Senior Borrower] of any monies that Senior Lender would have made to [Senior Borrower] under the Cash Management Agreement . . . ." (Letter at p. 3, ¶ 8 (uppercase changed to lower case)).

In essence, Junior Lender is attempting to exercise the Power of Attorney over Senior Borrower's interest in order to prevent Senior Lender from paying any monies owed to Senior Borrower. However, Junior Lender fails to take into account the fact that the "Cash Management Agreement" between Senior Lender and Senior Borrower (which overrides all Junior Loan Documents – including the Assignment) expressly states that "[Senior Borrower] hereby irrevocably appoints [Senior Lender] as [Senior Borrower's] attorney-in-fact (such agency being coupled with an interest) . . . ." (Cash Management Agreement, §6.01, p.6). Couple this with the clear language in the Intercreditor Agreement indicating that the Junior Loan Documents are subordinate to the Senior Loan Documents and there is no question that the Junior Lender cannot under any circumstances act as power-of-attorney over Senior Borrower. Despite this fact, this is

exactly what Junior Lender is attempting to do, as indicated by the July 27 letter. Thus, this TRO is necessary to prevent such unenforceable actions and require Junior Lender to show cause as to why it has the ability to use this alleged Power of Attorney over Senior Borrower.

## LAW AND ARGUMENT

### A. Legal Standards for the Issuance of a Temporary Restraining Order.

"A temporary restraining order may be granted without written or oral notice to the adverse party or the adverse party's attorney only if (a) it clearly appears from specific facts shown by affidavit or by a verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant from the delay required to effect notice or from the risk that notice will itself precipitate adverse action before an order can be issued; (b) the applicant's attorney certifies to the court in writing the efforts, if any, that have been made to give the notice and the reasons supporting the claim that notice should not be required; and (c) a permanent record or memorandum is made of any nonwritten evidence, argument, or other representations made in support of the application." M.C.R.3.310 (2009)

Under MCR 3.310(A)(4), the Plaintiffs must demonstrate "whether four factors favor the issuance of a preliminary injunction: (1) the moving party made the required demonstration of irreparable harm, (2) whether the harm to the applicant absent such an injunction outweighs the harm it would cause to the adverse party, (3) whether the moving party showed that it is likely to prevail on the merits, and (4) any harm to the public interest if an injunction is issued." *Cumulus Broadcasting LLC v. Keady*, 2010 WL 1727392 (Mich. App. 2010); citing *Detroit Fire Fighters Ass'n, IAFF Local 344 v. City of Detroit*, 482 Mich. 18, 34, 753 N.W.2d 579 (2008). As demonstrated herein, Plaintiffs have satisfied all elements and is thus entitled to a temporary restraining order against Defendants without notice.

## B. Plaintiffs will Suffer Immediate Irreparable Injury.

Courts have often stated that irreparable injury means "a noncompensable injury for which there is no legal measurement of damages or for which damages cannot be determined with a sufficient degree of certainty." *Thermal Corp v. Borzym*, 227 Mich App 366, 377; 575 NW2d 334 (1998).

In this case, Plaintiffs cannot be made whole through the issuance of economic penalties. Plaintiffs are requesting that Defendants be enjoined from using the power-of-attorney which it claims is properly granted to it pursuant to the Assignment of Senior Borrower's interest. The simple fact of the matter is that Defendants could use this power-of-attorney to accomplish an untold number of activities – much of which could never be compensated by monetary damages. Perhaps the most extreme of examples would be Defendants ability to dissolve the corporation as it sees fit. Clearly there is no doubt that this type of activity would result in immediate irreparable injury.

## C. Defendants Will Not Suffer Any Harm Whatsoever.

In the instant case, the risk of more harm definitely falls on the shoulders of Plaintiffs if the injunction is not issued. For the reasons stated above, Plaintiffs will suffer irreparable harm in the event that this TRO is not granted and Defendants are given power-of-attorney over Senior Borrower. Further, Defendants will not suffer any harm if the injunction is issued. Upon issuance of the injunction, Defendants will not be prevented from acting in any manner that it would otherwise legally be able to act. Thus, it will not be harmed in any way. Based on the above analysis, it seems quite clear that there will be more harm done to Plaintiffs in the absence of issuance of this TRO than there will be to Defendants if this TRO were issued. Therefore, Plaintiffs has established the second factor in the four- factor test.

### D. Plaintiffs Will Likely Succeed on the Merits.

Given the actions of the Defendants and the resulting harm to Plaintiffs, it seems clear that Plaintiffs has a very high probability of success on the merits as it pertains to Junior Lender's attempts at enforcing the unenforceable provision of the Assignment. It is clear from the Intercreditor Agreement that Junior Lender expressly agreed that all Junior Loan Documents would be subordinate to those of the Senior Loan Documents. (Intercreditor Agreement at §8(b), p.11). Additionally, clear that the Cash Management Agreement – a Senior Loan Document – expressly grants power-of-attorney to Senior Lender. (Cash Management Agreement at §6.01, p.6). Consequently, any Junior Loan Document that would allow the Junior Lender to enforce power-of-attorney over Senior Borrower is expressly subordinate to the Cash Management provision granting such power to Senior Lender. Thus, Plaintiffs will very likely succeed on the merits in seeking to enjoin the Defendant from using the unenforceable power-of-attorney.

### E. Injunctive Relief Will Not Harm Public Interest.

The public has a strong interest in making sure the contracts with which parties enter into are enforced. Moreover, in this case, Junior Lender was a sophisticated entity which should have understood that the Intercreditor Agreement it entered into would overrule any future agreement Junior Lender entered into with Junior Borrower. Thus, the public interest will in no way be harmed by the issuance of the TRO.

### CONCLUSION

For the above reasons, Plaintiffs requests that this Honorable Court issue a temporary restraining order and an order to show cause in accordance with the terms and conditions outlined in its Verified Petition.

**WHEREFORE**, Plaintiffs respectfully requests that the Court grant its petition for temporary restraining order and order to show cause, and specifically enjoin Defendants from:

(1) Enforcing the power-of-attorney allegedly granted to in by §8(a) of the Assignment of Limited Liability Company Interests in ICG Leaseback Fund I, LLC

Respectfully submitted,

*[signature]*

Law Offices of Douglas D. Hampton, P.C.
Douglas D. Hampton (P46378)
Daniel C. Flint (P73983)
Attorney for Plaintiffs
2000 Town Center, Suite 1900
Southfield, MI 48075
248-351-6283

Dated: July 29, 2011

Dated: July 29, 2011

## VERIFICATION

Attorney Daniel C. Flint affirmatively states that:

    (a)    I have personal knowledge of all facts set forth in the foregoing Verified Petition for Temporary Restraining Order (the "Petition"). Moreover, these facts are all present within the four corners of the documents attached as Exhibits to the Petition.

    (c)    The facts set forth in the foregoing Petition are true and correct in all respects.

    (d)    I have duly executed the foregoing Petition to verify the truth of all factual assertions made therein.

    (e)    Formal service of process and/or U.S. Mail should not be required as notice for this Petition due to the time sensitivity and Plaintiffs extreme exposure to irreparable damage.

FURTHER AFFIANT SAYETH NAUGHT.

                                                  Daniel C. Flint (P73983)